(As to CV-10-681-R only)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTEL, INC., a Corporation, ) | CASE NO. CV 10-0681-R |
| ) | (Consolidated with CV 10-3127-R) |
| Plaintiff, ) | |
| ) | |
| vs. ) | **FINDINGS OF FACT AND** |
| ) | **CONCLUSIONS OF LAW** |
| BNSF RAILWAY COMPANY, a ) | |
| Corporation, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The Motion for Summary Judgment or Alternatively for Partial Summary Judgment of Defendant BNSF RAILWAY COMPANY ("BNSF") came on for hearing on December 6, 2010. Attorney Leslie G. McMurray appeared as counsel on behalf BNSF. Attorney Stanley Gibson appeared on behalf of Plaintiff Mattel, Inc. ("Mattel"). After fully considering the moving, opposition and reply papers filed by the parties, all evidence and exhibits filed therewith, all filed and stated objections, the Court's own files and records, and having considered the oral argument of counsel for both parties, the Court hereby makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. The ocean carrier through its American agent CMA-CGM, S.A. ("CMA"), contracted with various shippers to move the containers at issue in this case from China to Fort Worth, Texas ("the shipments"). [10/15/10 Decl. of C. Martrou ("CM") at ¶2, p. 2:16-25, 3:1-3, Ex A (front pages)]

2. CMA issued through bills of lading for the shipments (hereafter the "CMA TBOL"). [CM, ¶ 1, p.3:6-7.]

3. Each CMA TBOL contains the same pre-printed contract terms. [CM, ¶ 2:4-7.]

4. Mattel was the designated consignee for receipt of the shipments in Fort Worth, Texas. [CM,¶ 4, p. 4:2-3; Mattel Complaint, ¶ 1:23-24.]

5. CMA subcontracted with BNSF for BNSF to move the shipments by rail from Long Beach to Fort Worth under BNSF Confidential Contract MA-66, Contract No. BF 53785 and the BNSF Intermodal Rules & Policies Guide ("IR&PG") (collectively, the "BNSF Contract"). [Decl. of Ronald Hamilton ("RGH") of 8/25/10 at ¶7 p. 7:17-27, p. 8, and Ex D at p. 3, ¶5, and Ex. E, Item 1, p. 6 (marked BN006); CM, at ¶7, p. 7:6-17.]

6. The BNSF train carrying the shipments derailed in Texas on November 22, 2008. [Decl. of John Wiederholdt dated 8/24/10 ("JW") at ¶3, p. 2; Decl. of John Stanford dated 10/15/10 (hereafter, "JS"), at ¶4, p. 3.]

7. Mattel now sues BNSF in its own name seeking $1,266,182.63. [Mattel Complaint at pp. 2:27-28, 3:1 (Prayer.) ECF Dkt. #1.]

8. The CMA TBOL was for "combined transport." [CM at ¶¶ 2-3 (Exhibit A, see face pages of each TBOL).]

9. The CMA TBOL defined the term "Merchant" to include the shipper, cargo owner, and consignee, binding each to its terms. [CM at ¶4:21-22, ¶5:1-3;  CM ¶4, p. 3:21-22, 4:1-2 (Ex. C, at ¶1, "DEFINITIONS"); RGH ¶ 4:9-13 and Ex. C at ¶ 1 "DEFINITIONS."]

10. Mattel was the designated consignee on the shipments. [CM at ¶ 2:16-24, ¶3:1-4 (and Exhibit A thereto, first pages of TBOL).]

11. Mattel avers that it was the beneficial owner of the cargo at issue. [Mattel's Complaint against BNSF at ¶ 1:23-24.]

12. The CMA TBOL provides:

> In accepting this bill of lading the Merchant agrees to be bound by all stipulation, exceptions, terms and conditions on the face and back hereof, whether written, typed, stamped or printed, as fully as if signed by the Merchant, any local custom or privilege to the contrary notwithstanding, and agrees that all agreements or freight engagements for and in connection with the carriage of Goods are superseded by this Bill of Lading.

[CM at ¶ 5 (Exhibit A, face pages of TBOL); RGH at ¶5:14-19, Ex. A, face pages TBOL.)]

13. The CMA TBOL provides:

> 6. CARRIER'S RESPONSIBILITY AND CLAUSE PARAMOUNT
>
> (1) . . . Notwithstanding anything else in this Bill of Lading to the contrary, on shipments to or from the United States, the rights and liabilities of the parties shall be subject exclusively to COGSA which shall also govern before the Goods are loaded on and after they are discharged from the vessel provided, however, that the Goods at said times are in the custody of Carrier or any Sub-Contractor.
>
> (2)(c) With respect to Combined Transportation from, to or within the United States, when the Goods are in the custody of the Carrier, or any Underlying Carrier, such Combined Transport will be governed by the provisions of Clause 6(1).
>
> (2)(d) In the event Clause 6 (1) is held inapplicable to such Combined Transportation from, to or within the United States, then Carrier's liability will be governed by, and be subject to, the terms and conditions of the Underlying Carriers Bill of Lading and/or, where applicable, the ICC Uniform Bill of Lading together with

3

|   |   |
|---|---|
| 1 | the Underlying Carrier's Tariff which shall be incorporated herein. |
| 2 | Notwithstanding the foregoing, in the event there is a private |
| 3 | contract of Carriage between the Carrier and any underlying |
| 4 | Carrier, such Combined Transportation will be governed by the |
| 5 | terms and conditions of said contract which shall be incorporated |
| 6 | herein as if set forth at length and copies of said contract(s) shall |
| 7 | be available to the Merchant at any office of the Carrier upon |
| 8 | request. |
| 9 | (2)(f)   The Carrier shall nevertheless be relieved of liability for |
| 10 | loss or damage occurring during the Carriage if such loss or |
| 11 | damage was caused by any cause or event which Carrier could not |
| 12 | have avoided and the consequences of which he could not have |
| 13 | reasonably prevented.  Carrier's maximum liability under this Sub- |
| 14 | Section 6(2)(f) shall be One Euro per kilo of the Goods lost or |
| 15 | damaged. |
| 16 | [CM ¶6 and Ex. C at ¶6; RGH ¶6 pp.4-5 and Ex. C. at  ¶6.] |
| 17 | 14.     The CMA TBOL provides: |
| 18 | 27.     SUBCONTRACTING AND INDEMNITY |
| 19 | (1)     The Carrier shall be entitled to sub-contract the Carriage on |
| 20 | any terms whatsoever. |
| 21 | (2)     The Merchant undertakes that no claim or allegation shall |
| 22 | be made against any Person whomsoever by whom the Carriage is |
| 23 | performed or undertaken (including all Sub-Contractors of the |
| 24 | Carrier), other than the Carrier, which imposes or attempts to |
| 25 | impose upon any such Person, or any vessel owned by any such |
| 26 | Person, any liability whatsoever in connection with the Goods or |
| 27 | the Carriage of the Goods, whether or not arising out of negligence |
| 28 | on the part of such Person and, if any such claim or allegation |

4

|    |     |                                                                                               |
|----|-----|-----------------------------------------------------------------------------------------------|
| 1  |     | should nevertheless be made, to indemnify the Carrier against all                             |
| 2  |     | consequences thereof.  Without prejudice to the foregoing every                               |
| 3  |     | such Person shall have the benefit of every right, defense,                                   |
| 4  |     | limitation and liberty of whatsoever nature herein contained or                               |
| 5  |     | otherwise available to the Carrier as if such provisions were                                 |
| 6  |     | expressly for his benefit; and in entering into this contract, the                            |
| 7  |     | Carrier, to the extent of these provisions, does so not only on his                           |
| 8  |     | own behalf but also as agent and trustee for such Persons."                                   |
| 9  |     | [CM ¶6, and Ex. C at ¶27; RGH ¶6 p. 6 and Ex. C. at  ¶27].                                    |
| 10 | 15. | There are no terms of the contracts filed with the Court that the Court finds to be           |
| 11 |     | ambiguous.                                                                                    |
| 12 | 16. | There is no term in any contract filed with the Court that this Court finds to conflict with or |
| 13 |     | displace the Covenant Not to Sue CMA's subcontractors in the CMA TBOL.                        |

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter under the Carriage of Goods by Sea Act and in admiralty.  46 U.S.C. § 30701 ("COGSA")
2. BNSF's carriage of the shipments was governed by the Carriage of Goods by Sea Act and in admiralty.  46 U.S.C. § 30701 ("COGSA.")
3. Under Rule 56( c) of the Fed. Rules of Civ. Proc., summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where no genuine issue of material fact defeats a defense, the Court may grant summary judgment in whole or in part.  Fed. R. Civ. Pro. 56(a),(b); *Wang Lab. v. Mitsubishi Elecs. Am.*, 860 F.Supp. 1448, 1450 (CD Cal. 1993).
4. Once the movant identifies "the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact," *Celotex Corp. v.*

|   |   |   |
|---|---|---|
| 1 | | *Catrett*, 477 U.S. 317, 323 (1986), the burden shifts to the opposing party to prove that |
| 2 | | summary judgment is unwarranted. *Id.* at 324. It cannot "rest solely on conclusory |
| 3 | | allegations." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). It must designate |
| 4 | | specific facts showing a genuine issue for trial. *Id.* More than a "metaphysical doubt" is |
| 5 | | required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v.* |
| 6 | | *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). |
| 7 | 5. | The Court finds that this matter is ripe for summary judgment. Mattel has had sufficient |
| 8 | | time to conduct discovery to date and has failed to make the requisite showing of having |
| 9 | | exercised prior due diligence in conducting discovery to date. *Pfingston v Ronan* |
| 10 | | *Engineering Co.*, 284 F 3d 999, (9th Cir. 2002). |
| 11 | 6. | Mattel also fails to identify "specific facts that further discovery would reveal, and explain |
| 12 | | why those facts would preclude summary judgment." *Tatum v. City & County of San* |
| 13 | | *Francisco*, 441 F.3d 1090, 1100 (9th Cir. 2006). This Court accordingly denies Mattel's |
| 14 | | Fed. Rule 56(f) motion for leave for more time to conduct discovery to try to controvert |
| 15 | | BNSF's evidence. |
| 16 | 7. | There is no genuine issue of material fact to defeat BNSF's defense that Mattel has failed |
| 17 | | to state a viable cause of action against BNSF, entitling BNSF to dismissal of Mattel's |
| 18 | | Complaint against it. |
| 19 | 8. | Mattel was bound by the terms of the CMA TBOL issued for the subject shipments. |
| 20 | 9. | Rail carriers are entitled to enforce ocean carriage through bill of lading terms in their |
| 21 | | favor including a covenant not to sue, when the rail carrier falls within the definition of the |
| 22 | | parties covered by a Himalaya clause therein. *Norfolk Southern Railway Co. v. Kirby*, 543 |
| 23 | | U.S. 14, at 30 (2004). |
| 24 | 10. | BNSF was a CMA subcontracting carrier within the meaning of the CMA TBL Himalaya |
| 25 | | clause in the CMA TBL at issue in this case. |
| 26 | 11. | Mattel asserts it was the shipper under the CMA TBOL terms whereas BNSF states that |
| 27 | | Mattel is bound by the CMA TBOL terms because it was the consignee and asserts it was |
| 28 | | the beneficial owner of the cargo. The court finds this disagreement to be immaterial to |

the issue of whether Mattel is bound by the CMA TBOL terms since as the named consignee thereunder, Mattel was bound by the CMA TBOL terms. *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 342 (1982).

12. This Court may interpret the plain meaning of the terms of the contracts filed with the court on this motion; parole evidence is not required to interpret those terms. *Mazda Motors of America, Inc. v. M/V Cougar Ace*, 565 F.3d 573 (9th Cir. 2009).

13. The CMA TBL's Covenant Not to Sue forbade Mattel to sue any of CMA's subcontracting carriers for any claims whatsoever on the shipments for cargo loss or damage irrespective of fault.

14. Covenants not to sue are not impermissible under Section 1303(8) of COGSA.

15. There are no terms in any of the contracts presented to the Court that are inconsistent with or would displace the clause which constitutes the Covenant Not to Sue CMA's subcontractors in the CMA TBOL.

16. The Service Contract between CMA and Mattel does not affect BNSF's ability to enforce the Covenant Not to Sue. The Service Contract only displaces inconsistent terms in the CMA TBL. And the Covenant Not to Sue subcontractors is consistent with the Service Contract in that both affix liability on the carrier, CMA. Further the Subcontracting and Assignment clause is consistent with the Covenant Not to Sue in the CMA TBL, and any breach of the clause would not affect BSNF's ability to fully enforce the Covenant Not to Sue.

17. Judgment dismissing the Complaint of Mattel, Inc. against BNSF with prejudice shall be entered forthwith.

18. BNSF is entitled to recovery of its costs herein.

Dated:  January  3, 2011.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE